J.A. WEINBERG, et al., Plaintiffs,

v.

Marion S. BARRY, et al., Defendants.

Civ. A. No. 83-2701.

United States District Court, District of Columbia.

March 14, 1986.

William W. Taylor, III & Douglas C. Herbert, Zuckerman, Spaeder, Goldstein, Taylor & Kolker, Washington, D.C., for plaintiffs.

John H. Suda, Acting Corp. Counsel, D.C., James R. Murphy, Deputy Corp. Counsel, D.C., Community Development Div., Robert J. Harlan, Jr., Asst. Corp. Counsel, D.C., Chief, Litigation Section, Washington, D.C., for defendants.

Arne M. Sorenson, Latham, Watkins & Hills, Washington, D.C., for D.C. Preservation League.

MEMORANDUM

OBERDORFER, District Judge.

I.

Plaintiffs in this action are trustees for the beneficial owners of a building in downtown Washington, D.C., known as the Warner Building, which is currently maintained as a combination theater and office building. Defendants are the Mayor of the District of Columbia, the Joint Committee on Landmarks of the National Capital (Joint Committee), and the District of Columbia Historic Preservation Review Board (Review Board). Intervenor is the D.C. Preservation League, a non-profit corporation dedicated to the preservation of District of Columbia landmarks.

The entire background of this action is set out in the Memorandum (Mem.) filed by the Court on January 30, 1985. It will thus not be fully reiterated here. In short, this action centers around attempts by defendants and intervenor to designate both the interior and the exterior of the Warner Building as historic landmarks. Plaintiffs contest the designation of their building because of the significant burdens placed on them by the designation. Whereas owners of all property in the District are required to apply for, and obtain, a permit to effect any change on the property, owners of property designated as an historic landmark must show that their proposed change is "necessary in the public interest" or that failure to effect the alteration would result in "unreasonable economic hardship" to the owner. D.C.Code §§ 5–1004(e), 5–1005(f).

Defendants, the Joint Committee and the Review Board, are entities which have successively been responsible for implementing the District of Columbia Historic Landmark and Historic District Preservation Act, D.C.Code §§ 5–1001—1015 (1981) (D.C. Act). On December 27, 1978, the District of Columbia enacted the D.C. Act, which came into effect shortly thereafter. The D.C. Act provides that:

Any body which functions as the District of Columbia State Review Board pursuant to the Act of October 15, 1966 (16 U.S.C. § 470 *et seq.*) as of the effective date of this chapter, shall function as the Review Board pursuant to this section until a Review Board is established and its members nominated by the Mayor and confirmed by the Council of the District of Columbia pursuant to this section.

D.C.Code § 5–1003(a). Pursuant to this section, the Joint Committee served as Review Board until the Review Board contemplated by the D.C. Act was finally established on May 6, 1983.

Under the D.C. Act, the members of the Review Board are nominated by the Mayor and confirmed by the City Council. D.C. Code § 5–1003(a). The members are compensated for their services, are subject to D.C. conflict of interest and financial disclosure statutes, must take an oath faithfully to discharge the duties of their office, and must maintain their primary residence within the District of Columbia. The Review Board's landmark designation decisions are subject to the procedural provisions of the D.C. Administrative Procedure Act, D.C. Code §§ 1–1501–1542. Thus the Review Board must provide hearings, at which witnesses are sworn and the parties have the right to present evidence and cross-examine witnesses; any order or deci-

sion must be based solely on the administrative record; and any order or decision must be in writing, supported by findings of fact and conclusions of law. Finally, the decisions of the Review Board are subject to judicial review by the District of Columbia Court of Appeals. *See A & G Limited Partnership v. Joint Committee on Landmarks of the National Capital*, 449 A.2d 291, 293 (D.C.1982).

The Joint Committee had been created in 1964 by two agencies—the Commission on Fine Arts and the National Capital Planning Commission. In 1968, the District of Columbia became the third "sponsor" of the Joint Committee, in order for the District to "qualify for participation in the federal historic preservation program instituted under the National Historic Preservation Act of 1966 [6 U.S.C. §§ 470 *et seq.* (1982) (federal act)]." *A & G Limited Partnership, supra,* 449 A.2d at 292 (quoting *Latimer v. Joint Committee on Landmarks*, 345 A.2d 484, 485 (D.C.1975) (footnote omitted)). Thus, until enactment of the D.C. Act, the Joint Committee implemented the federal act. Members were appointed through the joint concurrence of all three sponsors, so the Mayor was not solely responsible for appointments. Moreover, since Joint Committee members were not District of Columbia officials, their nominations did not have to be confirmed by the District of Columbia Council. The members were private individuals who received no compensation for their services. Because the members were private individuals, they were subject to none of the requirements of public officials, e.g., conflict of interest, financial disclosure, oath to faithfully discharge duties, and the requirement of District of Columbia residence. The Joint Committee was not a District of Columbia agency and thus was not subject to direct review in the District of Columbia Court of Appeals pursuant to the District of Columbia Administrative Procedure Act. *See A & G Limited Partnership, supra,* 449 A.2d at 293. Because it was not subject to the District of Columbia Administrative Procedure Act, the Joint Committee was not required to abide by the specific procedural requirements of the Act. Although it adopted its own procedural guidelines, these fell short of the requirements of the Act in several respects. *See* Statement of Points of Law and Authority in Support of Plaintiffs' Motion for Summary Judgment (Plaintiffs' Mem.) at 20 (filed June 1, 1984).

On January 30, 1985, this Court issued a final Memorandum and Order, disposing of the issues properly presented and declining to decide those issues deemed not yet ripe. Plaintiffs had argued that the *exterior* of their building had been illegally designated an historic landmark because the Joint Committee, the entity administering the D.C. Act in 1981 when the designation application at issue was filed, failed to act upon the pending designation application within 90 days of the filing of a permit application as required by the D.C. Act, § 5–1002(6)(B). The Court found that the Joint Committee had violated this 90-day limitation, and thus that the designation at issue was in violation of the D.C. Act. Mem. at 13–14.

Intervenor at that time expressed its concern that plaintiffs intended to press the argument that a failure by the Joint Committee to reach a designation decision within the 90-day period renders the property immune, in perpetuity, from landmark designation under the D.C. Act. The Court declined, however, to decide "the validity of any further *landmark* application or designation, or its effect upon some future *permit* application," noting that no "*subsequent* effort to apply for or grant landmark status upon a property is before the Court." Mem. at 13–14 & n. 11 (emphasis in original).

The Court also declined to rule upon plaintiffs' challenge to the ability of the Review Board to designate the *interior* of the Warner Building a historic landmark pursuant to a designation application then pending, on the grounds that the Review Board had not passed upon the application and plaintiffs had not filed a permit application to trigger the 90-day provision. Mem. at 19–20. In March, 1985, plaintiffs

filed a motion asking the Court to reconsider and modify its opinion based upon evidence allegedly newly discovered which indicated that the lessee of the Warner Building had filed a permit application during the time that the designation application for the interior of the building was pending. Plaintiffs argued that the Court should rule that any future designation of the interior of the building would be illegal since the Review Board had violated the 90-day rule. On March 7, 1985, the Court denied plaintiffs' motion.

The case was on appeal in the United States Court of Appeals for the District of Columbia. On October 1, 1985, the Court of Appeals granted plaintiffs' motion for a stay of their appeal pending decision by this Court on a motion pursuant to Fed.R. Civ.P. 60(b), for relief from final judgment and to reopen the record. Plaintiffs had filed the Rule 60(b) motion in this Court on September 18, 1985. As grounds for their motion, plaintiffs argued that events subsequent to the Court's entry of final judgment caused the issues not decided by the Court to become ripe and thus justified relief and a reopening of the record. Specifically, on March 18, 1985, the D.C. Preservation League filed a second application to designate the exterior of the Warner Building a historic landmark, and, pursuant to a joint hearing on the exterior and interior of the building, the Review Board on August 7, 1985, designated the exterior, and on August 21, 1985, the interior theater portion, of the building historic landmarks. These events indeed make ripe certain issues not decided by the Court in its final Memorandum and Order, the resolution of which would facilitate review in the Court of Appeals. Consequently, on December 18, 1985, this Court granted plaintiffs' Rule 60(b) motion.

On February 11, 1986, the Court of Appeals remanded the action to this Court for further proceedings. On March 6, 1986, the parties attended a status conference at which plaintiffs indicated that they deemed the action submitted to the Court for decision. Intervenor agreed, except that it indicated a need for further discovery if the Court deemed the facts surrounding the submission of a permit application for the interior of the Warner Building in November of 1984 to be material to its determination. The Court indicated that intervenor should file an affidavit indicating the facts agreed to and those in dispute, and indicated that it would notify plaintiffs if a response were necessary. The affidavit, termed Intervenor's Supplemental Opposition to Plaintiffs' Motion for Relief from Final Judgment and to Reopen the Record (filed March 10, 1986), indicates that all material facts regarding the interior permit application are undisputed. Consequently, no further filings by the parties are required. The action is now before the Court on the parties' renewed cross-motions for summary judgment as to the issues raised in plaintiffs' Rule 60(b) motion. Plaintiffs have, pursuant to Local Rule 1–9(i), filed a Supplemental Statement of Material Facts As To Which There is No Genuine Issue (SSMF) (filed Sept. 18, 1985).

## II.

Plaintiffs argue that they are now entitled to complete summary judgment in their favor. They press the issue not decided in the Court's earlier Memorandum and Order that the D.C. Act requires that once the entity implementing it exceeds the 90-day limit on decision, the property at issue is forever exempt from designation as an historic landmark under the D.C. Act. Specifically, plaintiffs make three separate arguments, which they claim entitle them to the relief they seek—permanent exemption of both the exterior and the interior of the Warner Building from landmark designation. These arguments are: (1) the failure of the District of Columbia government defendants to act on the first designation application relating to the exterior of the Warner Building within 90 days of receipt of the permit application means that the exterior of the building is forever free from designation as an historic landmark; (2) the failure of the District of Columbia government defendants to act on the designation application for the interior of the building

within 90 days of receipt of the permit application filed by the lessee means that the interior of the building is also forever free from landmark designation; and (3) the portion of the D.C. Act that applies to the interior of buildings is facially unconstitutional.

### A.

■ The section of the D.C. Act crucial to resolution of this case provides that the agency implementing the D.C. Act:

will determine within 90 days of receipt of [a permit] application ... whether to list such property [as an historic landmark], and any property not so listed will not be considered an historic landmark....

D.C.Code § 5–1002(6)(B). It is resolved that as to the 1981 application to designate the exterior of the Warner Building an historic landmark the Joint Committee, the agency then implementing the D.C. Act, did not abide by the 90-day rule. Mem. at 13–14. Plaintiffs argue that the meaning of the D.C. Act language "is plain." Plaintiffs' Mem. at 16. They claim that the words "will not be considered an historic landmark" mean that if a decision on whether a building is an historic landmark is delayed more than 90 days beyond the receipt of a permit application, then the property will *never* be considered an historic landmark. They argue that the D.C. Act was intended to protect property owners from prolonged uncertainty as to the status of their property, and that if it is not read to provide permanent protection, then its protection is "wholly illusory," Plaintiffs' Mem. at 16, and the D.C. Act, unconstitutional.

Intervenor argues that the more reasonable reading of this language is that it provides no penalty for failure by the Review Board to meet the 90-day requirement, but only "categorizes the treatment of properties which the Review Board has affirmatively decided not to list as historic landmarks." Intervenor's Memorandum of Points and Authorities in Opposition to Plaintiffs' Motion for Relief From Final Judgment and to Reopen the Record (Intervenor's Mem.) at 17 (filed Oct. 24, 1985). Even if it is read to provide some penalty, argues intervenor, it is not so severe as that advocated by plaintiffs. According to intervenor, the language:

should be interpreted to mean only that the pending landmark application becomes void and any permit applications filed thereafter must be decided under the lower standard applicable to buildings not designated as landmarks (until a subsequent landmark application, if any, is filed).

Intervenor's Mem. at 17–18. They argue that the draconian rule advocated by plaintiffs would serve only to penalize defendants, and derivatively the public, for procedural delays, especially since it would impose its absolute penalty without regard for the degree of the procedural violation. Moreover, they claim that such an interpretation would forever preclude the city from achieving the preservation purposes of the D.C. Act when some subsequent event increases the historic or architectural importance of a property. Finally, intervenor argues that plaintiffs' interpretation provides an unjustified windfall to a few property owners by selectively exempting a few properties forever from potential historic landmark designation.

In its Memorandum and Order of January 30, 1985, the Court recognized that the Joint Committee had violated the 90-day limitation and the Court set aside the improper designation. In so doing, the Court noted:

This mechanism [the 90-day rule] for triggering prompt disposition of an application is supported by strong policy considerations. Indeed, if the statute permitted action on landmark applications for which a permit application was also pending to be unreasonably delayed, the statute might well be vulnerable to challenge on well-established constitutional and administrative law grounds.... Indeed, defendants themselves argue that the imposition of landmark status immediately upon the filing of a landmark

application "cannot be held unconstitutional" in part because the 90-day decision mechanism "provid[es] building owners with a timely opportunity to contest the designation."

Mem. at 10–11 (citations omitted).

But despite the fact that the 90-day provision may be crucial to preserving the D.C. Act's constitutionality, imposition of the provision in the severe form advocated by plaintiffs is not warranted in this particular case. Here, the first designation application relating to the exterior of the Warner Building was filed in 1981. At that time the Joint Committee was still implementing the D.C. Act. Pursuant to the D.C. Act, the Joint Committee was acting only as an interim Review Board. D.C. Code § 5–1003(a). As plaintiffs themselves point out, because it was composed of private citizens, the Joint Committee did not behave with the rigor demanded of a government agency. Statement of Points of Law and Authority in Support of Plaintiffs' Motion for Summary Judgment at 17–18 (filed June 1, 1985). Not until 1983 was the Review Board established, an entity comprised of public officials accountable to the District of Columbia Council and subject to the requirements of the District of Columbia Administrative Procedure Act. The second designation decision now challenged by plaintiffs was made by the Review Board in 1985, acting, as far as is apparent in this litigation, in a timely and procedurally correct manner.* Plaintiffs argue that the current Review Board should be held responsible, under the statute, for the acts of its predecessor—an entity not comprised according to the terms of the statute which imposes the consequences. Yet, if the D.C. Act is to be read in the absolute manner advocated by plaintiffs, it must only be fairly read to apply to an entity which is, and knows itself to be, an agency, properly held accountable under the D.C. Act to the District of Columbia Council and the District of Columbia Court of Appeals.

Admittedly, exonerating the current Review Board from the potential consequences under the D.C. Act for the delay of its predecessor will result in plaintiffs' twice being subjected to the burdens of the D.C. Act. This single occurrence does not, however, render the D.C. Act unconstitutional. Strong public policy concerns militate in favor of interpreting the potentially severe consequences of the D.C. Act to apply only to a properly constituted D.C. agency. The D.C. Act purports to protect the public interest in historical landmarks. D.C.Code § 5–1001. Under the D.C. Act, that interest was intended to be waived, if at all, only by an agency properly accountable to the public. According to the D.C. Act, "The Mayor is authorized to establish an Historical Preservation Review Board whose members shall be confirmed by the Council of the District of Columbia." D.C. Code § 5–1003(a). Exonerating the Review Board from the acts of its predecessor in this case will preserve the public interest in proper landmark designation while preserving the Review Board's accountability under the statute as it is interpreted in a proper case.

Accordingly, to resolve this particular action it is not necessary to decide definitively between the conflicting interpretations advanced by the parties as to the meaning of the 90-day provision in the D.C. Act. Even were the D.C. Act to be read in the absolute manner proposed by plaintiffs, it is inappropriate to impose an absolute bar in this particular circumstance. The Review Board's designation of the exterior of the Warner Building as a historic landmark will thus not be set aside because of

---

* Plaintiffs state that they "are not seeking to litigate in this proceeding whether the HPRB's designation and permit decisions are substantively correct under D.C. law or whether the procedures followed by HPRB violated the U.S. Constitution, federal law, or District of Columbia law." Statement of Points of Law and Authority in Support of Motion for Relief from Final Judgment and to Reopen Record at 8 (filed Sept. 18, 1985). What is "apparent in this litigation," therefore are those issues that plaintiffs have chosen to "litigate in this proceeding." *Id.* The above statement should not prejudice plaintiffs' ability to litigate other issues in another forum, e.g., District of Columbia Superior Court.

the failure of its predecessor, the Joint Committee, to abide by the 90-day limitation on the designation decision.

### B.

■ Plaintiffs next contend that the Review Board violated the 90-day provision as to the *interior* of the Warner Building, relying on a permit application filed by its lessee as the trigger for the provision. This is exactly the argument rejected by the Court in its Order of March 7, 1985, denying plaintiffs' motion for reconsideration based on allegedly newly discovered evidence. As such, the Court's decision to reject plaintiffs' argument is the "law of the case" and should not be set aside. *United States v. Singleton,* 759 F.2d 176 (D.C.Cir.1985).

Plaintiffs argue that the basis for the Court's reopening the record—that issues not previously ripe have now become so—should lead the Court to reconsider its decision on this issue. But the fact that the interior of the Warner Building has now been designated a landmark, whereas at the time of decision it had not been, does not affect the basic flaw in plaintiffs' argument. Plaintiffs argue that because a permit application was filed on November 8, 1984, and the Review Board did not rule on the landmark status until August 7, 1985—more than 90 days later, the Review Board violated the 90-day provision as to the interior designation. The D.C. Act, however, states that the 90-day period will start to run upon receipt of a permit application. The District of Columbia Building Code provides that:

> [e]ach application for a permit ... shall be made in the name of the lawful owner of the property affected by the work to be done under the permit, and shall be signed by such name, or his authorized agent....

D.C.Mun.Regs. tit. 12, § 107.6 (1985).

■ It is undisputed that the owners of the Warner Building did not file the permit application argued by plaintiffs to have triggered the 90-day provision as to the interior of the building. SSMF at ¶ 13. If the D.C. Act is to be read to impose the severe consequences for a procedural error on the Review Board urged by plaintiffs, then the D.C. Act must be read to require strict adherence to procedural requirements by building owners also. That is, only a permit filed according to applicable regulations should trigger the 90-day period. Because the lawful owners of the Warner Building did not file the permit application at issue, the Review Board was not subject to the 90-day provision and the designation decision as to the interior of the building was not in violation of the D.C. Act..

### C.

Plaintiffs have not yet obtained a final administrative decision by seeking a variance or compensation through inverse condemnation procedures. Recognizing that a challenge to the D.C. Act as applied is therefore not yet ripe, plaintiffs challenge only the constitutionality of the D.C. Act on its face. Plaintiffs argue that the portion of the D.C. Act which permits designation of the interior of buildings as historic landmarks is unconstitutional on its face as a violation of the Takings Clause of the Fifth Amendment of the United States Constitution. They claim that any conceivable designation of a building interior would fail to serve a legitimate public interest, *Agins v. City of Tiburon,* 447 U.S. 255, 260, 100 S.Ct. 2138, 2141, 65 L.Ed.2d 106 (1980), require public invasion of private property, *Loretto v. Teleprompter Manhattan CATV Corp.,* 458 U.S. 419, 102 S.Ct. 3164, 3176, 78 L.Ed.2d 868 (1982), and completely deny the owners any economically viable use of their property, *Penn Central Transp. Co. v. City of New York,* 438 U.S. 104, 138 & n. 36, 98 S.Ct. 2646, 2666, & n. 36, 57 L.Ed.2d 631 (1978).

The purposes of the D.C. Act are: to accomplish the protection, enhancement and perpetuation of features of landmarks which represent distinctive elements of the city's cultural, social, economic, political and architectural history; to safeguard the city's historic, aesthetic and cultural heri-

tage; to foster civil pride in the accomplishments of the past; to protect and enhance the city's attraction to visitors, thereby supporting and stimulating the economy; and to promote the use of landmarks and historic districts for the education, pleasure and welfare of the people of the District of Columbia. D.C.Code § 5–1001(a). State and local legislatures have broad discretion in deciding what types of land use regulations will serve a public purpose, *Euclid v. Ambler Realty Co.*, 272 U.S. 365, 386–88, 47 S.Ct. 114, 117–18, 71 L.Ed. 303 (1926), and plaintiffs do not argue that the purposes articulated in the D.C. Act are unreasonable.

■ Plaintiffs' primary argument is that no designation of a building interior can serve a public purpose unless the government requires public access to the building. But on their face, the five articulated purposes of the D.C. Act refer to public benefits other than visual enjoyment, e.g., attracting visitors and thereby enhancing the economy. Thus, public viewing of the historic area is not necessary to serve a public purpose under the D.C. Act.

■ Even if plaintiffs' argument that a public purpose can only be served by public viewing of the property were accepted, there are in fact numerous conceivable private uses of the interiors of buildings which are compatible with public viewing of the area. Any private use which depends upon public patronage, e.g., a hotel or department store, would allow the public to view and enjoy the interior. In fact, here plaintiffs argue that the only economically viable use for their property is as a theater. Plaintiffs' Memorandum of Points and Authorities in Reply to Intervenors' [sic] Opposition to Plaintiffs' Motion for Relief from Final Judgment and to Reopen Record (filed Nov. 8, 1985) at 22 & n. 13. Thus even in this particular case, the owners' chosen use for their building is one which allows substantial numbers of individuals to enter and view the interior of the privately-owned building. A theater is but one example where, without mandating public invasion of the building or depriving its owners of its only economically viable use, the government can reasonably be expected to satisfy a number of the purposes of a historic preservation statute such as the D.C. Act.

Ultimate resolution of the constitutional questions presented in this case depends upon the application of the D.C. Act to the particular facts at issue. Because it appears that there are conceivable situations in which designation of a building interior as a historic landmark would not constitute a taking, the D.C. Act is not unconstitutional on its face.

\* \* \*

Accordingly, the accompanying Order will deny plaintiffs' motion for summary judgment and will dismiss plaintiffs' complaint.